UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, *et al.*,

                Plaintiffs,

v.

AMERICAN EXPRESS CO., *et al*.,

                Defendants.

No. 10-CV-04496 (NGG) (RER)

ECF Case

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE NEWLY DISCLOSED OPINIONS OF DR. GARY T. FORD

Evan R. Chesler
Stuart W. Gold
Peter T. Barbur
Kevin J. Orsini
CRAVATH, SWAINE & MOORE LLP
   825 Eighth Avenue
     New York, NY 10019
       (212) 474-1000

Donald L. Flexner
Philip C. Korologos
Eric J. Brenner
BOIES, SCHILLER & FLEXNER LLP
   575 Lexington Avenue
     New York, NY 10022
       (212) 446-2300

*Attorneys for Defendants*

July 21, 2014

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ......................................................................................................................... 3
    I.    DR. FORD'S TESTIMONY SHOULD BE EXCLUDED TO THE EXTENT IT CONTAINED OPINIONS NOT REFLECTED IN HIS EXPERT REPORT. ............................................................................................ 3
CONCLUSION ...................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
  77 F. Supp. 2d 446 (S.D.N.Y. 1999) .................................................................................. 3

*LaMarca v. United States*,
  31 F. Supp. 2d 110 (E.D.N.Y. 1998) .................................................................................. 3

*Lore v. City of Syracuse*,
  No. 5:00–CV–1833, 2005 WL 3095506 (N.D.N.Y. Nov. 17, 2005) ............................. 6, 7

*Morritt v. Stryker Corp.*,
  No. 07-CV-2319 (RRM)(RER), 2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ....5, 6, 7

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006) ............................................................................................... 5

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
  No. 93–CV–4001 (NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) ...................... 5, 6

**Statutes & Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i) .................................................................................... passim

Fed. R. Civ. P. 37(c)(1) ...................................................................................................... 2, 3, 8

As requested by the Court, Defendants American Express Company and American Express Travel Related Services Company, Inc. (collectively, "Amex") respectfully submit this memorandum of law in support of their motion to strike the newly disclosed opinions of Plaintiffs' expert, Dr. Gary T. Ford, as offered in violation of Federal Rule of Civil Procedure 26(a)(2)(B)(i).

## PRELIMINARY STATEMENT

On April 2, 2013, Dr. Gary T. Ford submitted an expert report in this case titled "Report of Gary T. Ford, Ph.D., Regarding Reliability of Certain American Express Merchant Surveys" ("Ford Report"). In the two sections of his report listing his expert opinions, titled "Summary of Conclusions Regarding the 2010 Amex Merchant Surveys" and "Conclusions Regarding the Reliability of the 2010 Amex Merchant Surveys", Dr. Ford listed six conclusions concerning the reliability of Amex's 2010 Merchant Satisfaction surveys:

- "The samples drawn for the 2010 MMSat, 2010 UMSat and 2010 OnePoint surveys are representative of their underlying populations.

- Use of an online survey for the MMSat and telephone survey for the UMSat and OnePoint surveys was appropriate given the objectives of the surveys and the targeted populations.

- The use of closed-ended questions was appropriate given the quantitative nature of the study and the survey objectives of evaluating Amex performance on a number of dimensions.

- The lack of explicit 'don't know' options is likely to inflate responses to some degree but there is no reason to expect the responses will be biased in a particular direction.

- In addition to reviewing the 2010 MSat study in general, I was asked to address three questions in further detail. These questions, B3, B4 and B8, were straightforward and concerned topics about which respondents were knowledgeable.

- The results to the 2010 surveys on questions B3, B4, and B8 replicated results from other Amex surveys using similar questions, which also supports the conclusion that the 2010 MSat surveys are reliable."

(Ford Report, ¶¶ 14, 104.)[1]

On July 14, 2014, the day before Dr. Ford was scheduled to testify, Plaintiffs pulled a "bait and switch". They sent Amex a demonstrative suggesting that Dr. Ford was going to testify to opinions beyond those laid out in his report. Amex's suspicions were confirmed when Dr. Ford took the stand. By his own admission, he offered multiple opinions that were not disclosed in his expert report or at his June 2013 deposition, specifically conclusions about the reliability of merchant satisfaction surveys from 2006, 2008 and 2012, and substantive conclusions regarding the results of these surveys. These eleventh-hour opinions were not prompted by new facts or offered in response to criticisms of Dr. Ford's original opinions made by a rebuttal expert. In fact, when Amex made its in-court motion to exclude, Plaintiffs offered no justification for not complying with Rule 26(a)(2)(B)(i). Instead, they argued that the "data" supporting Dr. Ford's new opinions had been disclosed in his report, and that his new opinions were "solicited on cross-examination by [defense] counsel." (Trial Tr. 1896:15-1897:10, July 16, 2014.) The first explanation is woefully inadequate and the second demonstrably false. Rule 26(a)(2)(B)(i) requires disclosure of both all bases (data) <u>and opinions</u> that will be offered at trial, not just the underlying data. Moreover, the new opinions were not solicited first in the cross-examination—they appear in Dr. Ford's "Trial Presentation" demonstrative (PX2654) used on his direct examination, especially slide 31.[2] Therefore, the springing of Dr. Ford's new opinions at trial was neither "substantially justified" nor "harmless" and these opinions should be excluded from the record pursuant to Rules 26(a)(2)(B)(i) and 37(c)(1).

---

[1] The relevant excerpts of Dr. Ford's opening report are attached as Exhibit A to the accompanying Declaration of Stuart W. Gold ("Gold Declaration"). The full report can be found at PX1488.

[2] A copy of PX2654 is attached as Exhibit B to the Gold Declaration.

2

**ARGUMENT**

I. DR. FORD'S TESTIMONY SHOULD BE EXCLUDED TO THE EXTENT IT CONTAINED OPINIONS NOT REFLECTED IN HIS EXPERT REPORT.

Under Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure, an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them".  The "duty to disclose information concerning expert testimony is intended to allow opposing parties to have a reasonable opportunity [to] prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *LaMarca v. United States*, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998) (Boyle, M.J.) (internal quotation marks omitted).  Rule 37 of the Federal Rules of Civil Procedure provides:  "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The threat of exclusion "provide[s] parties with an incentive to disclose, in a timely manner, all material evidence and to prevent the practice of 'sandbagging' an adversary with new evidence at trial".  *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999).

Dr. Ford's trial testimony violates Rule 26(a)(2)(B)(i) because, as Dr. Ford himself admitted in court, he expressed opinions that were not disclosed in his expert report:

> "Q: And the conclusions on Exhibit 2654, those aren't conclusions that you offered before today?
>
> A: I think that's correct.
> . . .
>
> Q: These conclusions on your presentation today, slide 31, aren't present in your report because they don't relate directly to the reliability of the 2010 merchant satisfaction survey, correct?
>
> A: That's correct."

(Trial Tr. 1843:18-1844:9)  Specifically, the conclusions in Dr. Ford's original report were limited to the reliability of the 2010 Merchant Satisfaction surveys: "In sum, in my opinion since the 2010 MSat surveys were conducted with representative samples of qualified respondents who were asked straightforward questions, the 2010 MMSat and 2010 UMSat surveys provide reliable information."  (Ford Report ¶ 105; *see also id.* at ¶ 104.)  Although he reviewed the results of the merchant satisfaction surveys from 2006, 2008 and 2012 to confirm that certain questions in the 2010 surveys were appropriate and likely to lead to reliable results, he did not express any opinions regarding the reliability of those surveys in his report.[3]  Furthermore, Dr. Ford's initial report did not express any opinions regarding the substantive conclusions that could be drawn from the surveys.  To the extent Dr. Ford's testimony at trial regarding the results of the merchant satisfaction surveys from 2006, 2008 and 2012 was intended simply to read into the record the results that appear in the various Amex documents summarizing the surveys or solely to indicate that the results were "not [un]stable", thus supporting the reliability of the 2010 surveys (Trial Tr. 1801:12-17), Amex does not move to strike. (*See, e.g.,* Trial Tr. 1805:20-25; 1806:17-1807:4; 1809:13-1810:21.)  To the extent, however, Dr. Ford was offering his opinion that the results of the surveys from 2006, 2008 and 2012 were reliable because he analyzed those surveys for reliability, those opinions were not disclosed in his report and should be stricken.

        Plaintiffs' argument that Dr. Ford's additional opinions were not new because the data on which he based them were disclosed in his report is unavailing as Rule 26(a)(2)(B)(i)

---

[3] In fact, at the outset of his trial testimony, Dr. Ford was consistent with his report, noting that he consulted the results of the surveys from other years solely to determine that the questions in the 2010 surveys were reliable and produced consistent results.  (Trial Tr. 1801:1-21.)

clearly states that an expert report must include "a <u>complete</u> statement of all opinions", not just the basis for opinions disclosed and undisclosed.[4]

To determine whether preclusion of Dr. Ford's testimony is an appropriate remedy for Plaintiffs' violation of Rule 26(a)(2)(B)(i), the Court of Appeals instructs trial courts to consider four factors: "(1) plaintiffs' explanation for their failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Morritt v. Stryker Corp.*, No. 07-CV-2319 (RRM)(RER), 2011 WL 3876960, at *6 (E.D.N.Y. Sept. 1, 2011) (citing *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)). No showing of bad faith is required before precluding evidence. *Id.* at *5. Dr. Ford's newly disclosed opinions should be excluded applying these factors.

<u>First</u>, Plaintiffs have offered no explanation for their failure to comply with the disclosure requirement. Dr. Ford's newly disclosed opinions were based on the very documents he had when he wrote his report and when he was deposed. This is not a situation in which Dr. Ford had to revise his opinions because "a new or previously unknown event ha[d] recently come to light". *Point Prods. A.G. v. Sony Music Entm't, Inc.,* No. 93–CV–4001 (NRB), 2004 WL 345551, at *11 (S.D.N.Y. Feb. 23, 2004). Rather, his opinions are simply additional points that could have and should have been included in his initial report under the clear dictates of Rule 26(a)(2).[5]

---

[4] To the extent Plaintiffs' claim that defense counsel had an adequate opportunity to examine Dr. Ford at his deposition and "solicit all his opinions" (Trial Tr. 1896:20-21), counsel is not required to be prescient and divine what undisclosed opinions an expert might harbor.

[5] Critically, Dr. Ford's new opinions do not respond to any arguments or criticisms raised by Amex's experts in their reports or depositions. This contrasts starkly with the frequent situation of experts who do additional work in aid of their trial testimony to respond to issues raised by

5

Second, if Plaintiffs thought Dr. Ford's newly disclosed opinions were important to their case, they would have included them in his opening report—which they did not. *See Point Prods*, 2004 WL 345551, at *11 (criticizing "eleventh hour effort to rescue a deficient expert report" when plaintiff had opportunity to include the opinions in earlier report). Even if Plaintiffs did believe Dr. Ford's newly disclosed opinions were critical to their case, that "only serves to underscore the inexcusable quality of [their] delayed submission". *Id.*

Third, the prejudice to Amex of having to prepare to meet Dr. Ford's new testimony is high because Dr. Ford's new opinions were not disclosed until the day before he testified. Reopening discovery now to permit an additional expert report and deposition is not a reasonable answer. *See Morritt*, 2011 WL 3876960, at *7 ("[T]he prejudice to defendants of admitting [expert's] testimony would be severe, as discovery would have to be reopened to permit additional expert reports and depositions." (internal quotation marks omitted)). While Amex was able to cross-examine Dr. Ford at trial on the opinions disclosed in his initial report and on the fact that he was expressing new opinions, Amex was not given an opportunity to fully and fairly cross-examine him on the substance of those new opinions, including the methodology he used to determine that the surveys from 2006, 2008 and 2012 were independently reliable. *See Lore v. City of Syracuse,* No. 5:00–CV–1833, 2005 WL 3095506, at *4 (N.D.N.Y. Nov. 17,

---

adversaries in the final round of expert submissions or depositions. In such circumstances, there is no "bait and switch" about what opinions are at issue and logic dictates that an expert must be able to respond to criticisms lodged by opposing experts after Rule 26 reports have already been served. Here, Amex experts were criticized at their depositions and in sur-rebuttal or supplemental expert reports for supposed methodological deficiencies in their data analyses. Amex experts intend to respond to these criticisms based on additional calculations expressly addressing Plaintiffs' experts' criticisms and Plaintiffs will receive these analyses (and supporting data) well in advance of their testimony. To the extent Plaintiffs' experts also have calculations that—unlike Dr. Ford's new opinions—are similarly rebuttal in nature, Amex would have no objection to expert testimony about these calculations, assuming reasonable notice and disclosure of any such work (and supporting data) is provided.

2005) (in a contrasting situation, permitting submission of an untimely expert report because it "did not include a new opinion which had not been previously disclosed").

<u>Fourth</u>, the possibility of a continuance is similarly impractical as the case has already proceeded to trial and discovery has long since closed. *See Morritt*, 2011 WL 3876960, at *7 ("[T]he fact that discovery is closed and this case has been pending for over four years weighs strongly against the possibility of a continuance." (internal quotation marks omitted)).

Accordingly, all of the relevant factors weigh in favor of precluding Dr. Ford's newly disclosed opinions and the Court should so rule. The specific portions of Dr. Ford's testimony that should be stricken are annexed as Exhibit C to the accompanying Gold Declaration.[6]

---

[6] To the extent the Court grants Amex's request to strike Dr. Ford's testimony, we request that Dr. Ford's Trial Presentation demonstrative (PX2654) be revised to reflect the ruling, including deletion of slide 31.

## CONCLUSION

For the foregoing reasons, Dr. Ford's newly disclosed expert opinions contained in his testimony violate Rule 26(a)(2)(B)(i) and should be stricken from the record under Rule 37(c)(1).

July 21, 2014

Respectfully submitted,

*/s/ Stuart W. Gold*

Evan R. Chesler
(echesler@cravath.com)
Stuart W. Gold
(sgold@cravath.com)
Peter T. Barbur
(pbarbur@cravath.com)
Kevin J. Orsini
(korsini@cravath.com)
Members of the Firm

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Donald L. Flexner
(dflexner@bsfllp.com)
Philip C. Korologos
(pkorologos@bsfllp.com)
Eric J. Brenner
(ebrenner@bsfllp.com)

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

*Counsel for Defendants American Express Company and American Express Travel Related Services Company, Inc.*