# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br>Plaintiffs<br><br>v.<br><br>AMERICAN EXPRESS CO., et al.,<br>Defendants | No. 10-CV-04496 (NGG) (RER)<br>ECF Case<br><br>[PROPOSED] FINAL JUDGMENT AS TO THE AMERICAN EXPRESS DEFENDANTS AND ORDER ENTERING INJUNCTION |

NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT JUDGE

## I. DEFINITIONS

As used in this Final Judgment and Order Entering Injunction:

1. "Acquiring Bank" means a Person authorized by a General Purpose Card Network to enter into agreements with Merchants to accept that Network's General Purpose Cards as payment for goods or services.

2. "All-In Merchant Fee" means the total of all fees incurred by a Merchant for the particular transaction when a Customer uses a particular General Purpose Card to purchase goods or services from the Merchant, including, but not limited to, the merchant discount rate, interchange fees, network fees, processing fees and acquirer fees, whether charged or collected on (a) a per transaction basis, or (b) an annual basis or any other basis, in which case the calculation shall be pro-rata.

3. "American Express" means American Express Company, a New York corporation with its principal place of business in New York, New York, and American Express Travel Related Services Company, Inc., a Delaware corporation with its principal place of business in New York, New York, their successors and assigns, and their controlled subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.

4. "American Express General Purpose Card" means a General Purpose Card bearing the Brand of American Express.

5. "Brand" means the brand or mark of a General Purpose Card Network.

6. "Customer" means a Person that pays for goods or services.

7. "Department of Justice" means the United States Department of Justice, Antitrust Division.

8. "Discover" means Discover Financial Services, a Delaware corporation with its principal place of business in Riverwoods, Illinois, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.

9. "Effective Date" means the later of: (a) ninety (90) days following the date of entry of this Final Judgment; or (b) ninety (90) days following the expiration of any stay of this Final Judgment entered by this Court or any appellate court of competent jurisdiction.

10. "Final Judgment" means this document: the Final Judgment and Order Entering Injunction in <u>United States of America, et al. v. American Express Co., et al.</u>, Civil Action No. 1:10-CV-4496.

11. "General Purpose Card" means a credit or charge card issued pursuant to Rules of a General Purpose Card Network that enables Customers to make purchases from unrelated Merchants without accessing or reserving funds, regardless of any other functions the card may have.

12. "General Purpose Card Network" means any Person that directly or indirectly assembles a group of unrelated Merchants to accept and a group of unrelated Customers to make purchases with General Purpose Cards bearing the Person's Brand and includes General Purpose Card Networks such as Visa, MasterCard, American Express and Discover.

13. "Including" means including but not limited to.

14. "Issuing Bank" means (a) a Person authorized by a General Purpose Card Network to enter into agreements with cardholders for the use of that Network's General Purpose Cards for payment at a Merchant; or (b) a General Purpose Card Network that enters into agreements with cardholders for the use of that Network's General Purpose Cards for payment at a Merchant.

15. "Less Expensive General Purpose Card" means a General Purpose Card that, for the particular transaction, has an All-In Merchant Fee that is lower than the All-In Merchant Fee that the Merchant would pay for that same transaction if the Customer were to use an American Express General Purpose Card.

16. "MasterCard" means MasterCard International Incorporated, a Delaware corporation with its principal place of business in Purchase, New York, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.

17. "Merchant" means a Person that accepts American Express's General Purpose Cards as payment for goods or services.

18. "Other General Purpose Card" means a General Purpose Card that does not bear the Brand of American Express.

19. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

20. "Plaintiff States" means the States of Arizona, Connecticut, Idaho, Illinois, Iowa, Maryland, Michigan, Missouri, Montana, Nebraska, New Hampshire, Ohio, Rhode Island, Tennessee, Texas, Utah and Vermont.

21. "Representative Plaintiff States" means, as of the Effective Date of this Final Judgment, the States of Missouri, Ohio and Texas. The Plaintiff States may designate a different Plaintiff State as a substitute Representative Plaintiff State at any time by communicating the change in writing to American Express and the United States.

22. "Rule" means any rule, bylaw, policy, standard, guideline or practice applicable to Merchants in the United States in connection with accepting General Purpose Cards.

23. "Type" means a category of General Purpose Cards, including but not limited to traditional cards, rewards cards or premium cards (*e.g.*, a "Visa Signature Card" or a "World MasterCard").

24. "Visa" means Visa Inc., a Delaware corporation with its principal place of business in San Francisco, California, its successors and assigns and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships and joint ventures, and their

directors, officers, managers, agents and employees, but shall not include Visa Europe Limited and its wholly owned affiliates.

25. The terms "and" and "or" have both conjunctive and disjunctive meanings.

## II. APPLICABILITY

This Final Judgment applies to American Express and to all other Persons in active concert or participation with it who receive actual notice of this Final Judgment by personal service or otherwise.

## III. PROHIBITED CONDUCT

A. The purpose of this Section III is to allow Merchants to attempt to influence Customers to use Less Expensive General Purpose Cards by providing choices and information in a competitive market. This Final Judgment should be interpreted to promote such efforts and not limit them. Accordingly, upon the Effective Date, American Express shall not adopt, maintain or enforce any Rule, or enter into or enforce any agreement, that directly or indirectly prohibits, prevents or restrains any Merchant in the United States from:

1. offering the Customer a discount or rebate, including an immediate discount or rebate at the point of sale, if the Customer uses a Less Expensive General Purpose Card;

2. offering a free or discounted product if the Customer uses a Less Expensive General Purpose Card;

3. offering a free or discounted or enhanced service if the Customer uses a Less Expensive General Purpose Card;

4. offering the Customer an incentive, encouragement or benefit for using a Less Expensive General Purpose Card;

5

    5. expressing a preference for the use of a Less Expensive General Purpose Card;

    6. promoting the use of Less Expensive General Purpose Cards through posted information, through the size, prominence or sequencing of payment choices or through other communications to a Customer;

    7. communicating to a Customer the actual relative costs incurred by the Merchant for the Customer's use of different General Purpose Cards for a particular transaction; or

    8. engaging in any other practices substantially equivalent to the practices described in Sections III.A.1 through III.A.7 of this Final Judgment.

 B. Subject to compliance with the antitrust laws, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and any other applicable state or federal law, nothing in this Final Judgment shall prohibit American Express from:

    1. enforcing existing agreements or entering into agreements pursuant to which a Merchant selects American Express General Purpose Cards as the only General Purpose Cards the Merchant will accept as payment for goods and services;

    2. enforcing existing agreements or entering into agreements pursuant to which a Merchant agrees that it will encourage Customers to use co-branded or affinity General Purpose Cards bearing both the American Express Brand and the co-brand or affinity partner's name, logo or brand as payment for goods and services and will not encourage Customers to use Other General Purpose Cards;

    3. enforcing existing agreements or entering into agreements pursuant to which a Merchant agrees (a) that it will encourage Customers to use American Express General Purpose Cards as payment for goods and services; and (b) that it will not encourage Customers to use Other General Purpose Cards as payment for goods and services; *provided that* (i) any such agreement is individually negotiated with the Merchant and is not a standard agreement or part of a standard agreement generally offered by American Express to multiple Merchants; and (ii) the Merchant's acceptance of American Express General Purpose Cards as payment for goods and services is unrelated to and not conditioned upon the Merchant's entry into any such agreement;

    4. adopting, maintaining, and enforcing Rules that prohibit Merchants from encouraging Customers to pay for goods or services using an American Express General Purpose Card issued by one particular Issuing Bank rather than American Express General Purpose Cards issued by any other Issuing Bank;

    5. adopting, maintaining and enforcing Rules that require a Merchant that engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment to either (a) post signage at the point of sale indicating that American Express General Purpose Cards are accepted by the Merchant; or (b) if the Merchant engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment only through verbal communications, to mention that American Express General Purpose Cards are accepted by the Merchant as part of that same communication.  With respect to online or mobile transactions, if a Merchant engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment, American Express shall be entitled to require that the

signage indicating American Express acceptance must appear at the earliest point within the payment path at which any such practice occurs;

      6.    providing certain benefits, programs or services, including marketing benefits intended to increase Merchant sales on American Express General Purpose Cards, available only to Merchants (whether under an existing contract or a contract entered into hereafter) that do not engage in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment or differentiating the fee charged to a Merchant for such benefits, programs or services based on whether or not the Merchant engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment (*e.g.*, charging a Merchant that engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment a higher fee for certain benefits, programs or services than American Express charges to Merchants that do not engage in any of those practices);

      7.    undertaking efforts to influence its Card Members to transact with Merchants that do not engage in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment;

      8.    exercising the right not to do or continue to do business with a Merchant that engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment; and

      9.    adopting, maintaining and enforcing Rules that require the Merchant to provide reasonable advance notice to American Express before the Merchant engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment after a period of not having engaged in any of those practices in the preceding twelve (12) months.

C. Subject to Section III.A of this Final Judgment, nothing in this Final Judgment shall prohibit American Express from (a) adopting, maintaining and enforcing Rules that prohibit Merchants from disparaging or mischaracterizing its Brand or making untrue statements about American Express or the Merchant's All-In Merchant Fee for accepting American Express General Purpose Cards; or (b) adopting, maintaining and enforcing rules that prohibit or restrict merchants from imposing surcharges.

D. American Express shall not adopt, maintain or enforce any Rule, or enter into or enforce any agreement, that prohibits, prevents, restrains, deters or inhibits an Acquiring Bank from supplying a Merchant, on a transaction-by-transaction or other basis, information regarding the costs or fees the Merchant would incur in accepting each General Purpose Card, including a particular Type of General Purpose Card, presented by the Customer as payment for that Customer's transaction.

## IV. **REQUIRED CONDUCT**

A. Within thirty (30) days after the Effective Date of this Final Judgment, American Express shall delete, discontinue and cease to enforce in the United States any Rule that it would be prohibited from adopting, maintaining or enforcing pursuant to Section III.A of this Final Judgment, subject to Section III.B.

B. Nothing in this Section IV shall be construed to express any view on the legality of any Rule that American Express is not required to delete; in particular, no view is expressed concerning the legality of any past, present or future Rule concerning surcharges.

C. American Express shall take the following actions to ensure that Merchants that accept its General Purpose Cards as payment for goods or services are notified of this Final Judgment and the Rules changes that American Express makes pursuant to this Final Judgment.

9

Within ten (10) business days after the Effective Date of this Final Judgment, American Express shall furnish to the United States and the Representative Plaintiff States, for comment by the United States, in consultation with the Representative Plaintiff States, a proposed form of written notification to be provided to Merchants:

    1.    describing the Rules changes made pursuant to this Final Judgment; and

    2.    informing each such Merchant that American Express will no longer enforce any provision in any agreement between American Express and the Merchant that American Express would be prohibited from entering into or enforcing pursuant to Section III.A of this Final Judgment.  Within five (5) business days after receiving comments of the United States, and subject to any request by the United States for judicial intervention, American Express shall make reasonable efforts to furnish the approved notification described above, together with a paper or electronic copy of this Final Judgment (including by providing a hyperlink to the Final Judgment in an email communication) to each Merchant that is permitted to accept American Express General Purpose Cards as payment for goods or services.  For any Merchant that accepts American Express General Purpose Cards by virtue of contracts with third-party processors, such as External Sales Agents, OnePoint partners or OptBlue partners, American Express shall give notice in compliance with this Section IV.C either directly to the Merchant or by directing such Person to provide notice in compliance with this Section IV.C to the Merchant.

    D.    Within forty-five (45) days after the Effective Date of this Final Judgment, American Express shall furnish to the United States and the Representative Plaintiff States an affidavit describing the actions it took to comply with Sections IV.A and IV.C of this Final Judgment.

## V. COMPLIANCE AND ENFORCEMENT PROCEDURES

A. For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time, duly authorized representatives of the United States Department of Justice Antitrust Division or the Representative Plaintiff States, including consultants and other persons retained by the United States or the Representative Plaintiff States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, and on reasonable notice to American Express, be permitted:

1. access during regular business hours to inspect and copy, or at the option of the United States or the Representative Plaintiff States, to require American Express to provide to the United States and the Representative Plaintiff States paper or electronic copies of all books, ledgers, accounts, records, data and documents in the possession, custody, or control of American Express, relating to any matters contained in this Final Judgment; and

2. to interview, either informally or on the record, American Express's officers, employees, or agents, who may have counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by American Express.

B. Upon the reasonable written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, American Express shall submit written reports or respond to written interrogatories, under oath, relating to any of the matters contained in this Final Judgment. Written reports authorized under this paragraph may require

11

American Express to conduct, at its cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

      C.      No information or documents obtained by the means provided in Section V.A or V.B of this Final Judgment shall be divulged by the United States or any Plaintiff State to any person other than an authorized representative of the executive branch of the United States or the Attorney General's Office of any Plaintiff State, except in the course of legal proceedings to which the United States or the relevant Plaintiff State(s) is a party (including grand jury proceedings) or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

      D.      If at the time information or documents are furnished by American Express to the United States and the Representative Plaintiff States, American Express represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure and American Express marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States and the Representative Plaintiff States shall give American Express twenty-one (21) calendar days' notice prior to divulging such material in any civil or administrative proceeding.

      E.      Third parties may submit complaints concerning American Express's compliance with this Final Judgment to the United States, to the Representative Plaintiff States or to the Chief Compliance Officer of American Express.

## VI. ADDITIONAL PROVISIONS

A.     This Court retains jurisdiction to enable the United States, the Representative Plaintiff States, any other Plaintiff State (after consultation with the United States and the Representative Plaintiff States) or American Express to apply to this Court at any time for, or to act *sua sponte* to issue, further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance and to punish violations of its provisions.

B.     Nothing in this Final Judgment is intended to make any ruling or express any view about any Rule involving surcharging. Nothing in this Final Judgment is intended to make any ruling or express any view about the terms of the pending settlement in MDL 2221. Nothing in this Final Judgment shall limit the right of the United States or of the Plaintiff States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule of American Express, including any current Rule and any Rule adopted in the future.

C.     Unless the Court grants an extension, this Final Judgment shall expire at the earlier of: (a) ten (10) years from the entry of this Final Judgment; or (b) the date upon which either Visa or MasterCard adopts Rules that prohibit Merchants from engaging in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Final Judgment.

SO ORDERED.

Dated: _____
         Brooklyn, New York

                                                                  _____
                                                                  NICHOLAS G. GARAUFIS
                                                                  United States District Judge