UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
  UNITED STATES OF AMERICA, et al.,

                                    Plaintiffs,

            -against-

  AMERICAN EXPRESS COMPANY and
  AMERICAN EXPRESS TRAVEL RELATED
  SERVICES COMPANY, INC.,

                                  Defendants.
------------------------------------------------------------------X

**ORDER ENTERING PERMANENT INJUNCTION AS TO THE AMERICAN EXPRESS DEFENDANTS**

**10-CV-4496 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

## I. DEFINITIONS

As used in this Order Entering Permanent Injunction as to the American Express Defendants:

A.    "Acquiring Bank" means a Person authorized by a General Purpose Card Network to enter into agreements with Merchants to accept that Network's General Purpose Cards as payment for goods or services.

B.    "American Express" means American Express Company, a New York corporation with its principal place of business in New York, New York, and American Express Travel Related Services Company, Inc., a Delaware corporation with its principal place of business in New York, New York, their successors and assigns, and their controlled subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.    "American Express General Purpose Card" means a General Purpose Card bearing the Brand of American Express.

D. "Brand" means the brand or mark of a General Purpose Card Network.

E. "Customer" means a Person that pays for goods or services.

F. "Department of Justice" means the United States Department of Justice, Antitrust Division.

G. "Effective Date" means the later of: (i) thirty (30) days following the date of entry of this Permanent Injunction; or (ii) thirty (30) days following the expiration of any stay of this Permanent Injunction entered by this court or any appellate court of competent jurisdiction.

H. "General Purpose Card" means a credit or charge card issued pursuant to rules of a General Purpose Card Network that enables Customers to make purchases from unrelated Merchants without accessing or reserving funds, regardless of any other functions the card may have.

I. "General Purpose Card Network" means any Person that directly or indirectly assembles a group of unrelated Merchants to accept and a group of unrelated Customers to make purchases with General Purpose Cards bearing the Person's Brand, and includes General Purpose Card Networks such as Visa, MasterCard, American Express, and Discover.

J. "Including" means including but not limited to.

K. "Issuing Bank" means (i) a Person authorized by a General Purpose Card Network to enter into agreements with cardholders for the use of that Network's General Purpose Cards for payment at a Merchant; or (ii) a General Purpose Card Network that enters into agreements with cardholders for the use of that Network's General Purpose Cards for payment at a Merchant.

L. "MasterCard" means MasterCard International Incorporated, a Delaware corporation with its principal place of business in Purchase, New York, its successors and

assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

M. "Merchant" means a Person that accepts American Express's General Purpose Cards as payment for goods or services. For the avoidance of doubt, "Merchant" includes Persons, including Official Payments, that offer the service of facilitating General Purpose Card payments for other Persons (such as governmental entities and universities) and Persons, including PayPal and Square, that offer mobile wallet services.

N. "Other General Purpose Card" means a General Purpose Card that does not bear the Brand of American Express.

O. "Permanent Injunction" means this document: the Order Entering Permanent Injunction as to the American Express Defendants in <u>United States, et al. v. American Express Co., et al.</u>, No. 10-CV-4496 (NGG) (RER) (E.D.N.Y.).

P. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

Q. "Plaintiff States" means the States of Arizona, Connecticut, Idaho, Illinois, Iowa, Maryland, Michigan, Missouri, Montana, Nebraska, New Hampshire, Ohio, Rhode Island, Tennessee, Texas, Utah, and Vermont.

R. "Representative Plaintiff States" means, as of the Effective Date of this Permanent Injunction, the States of Missouri, Ohio, and Texas. The Plaintiff States may designate a different Plaintiff State as a substitute Representative Plaintiff State at any time by communicating the change in writing to American Express and the Department of Justice.

  S. "Rule" means any rule, bylaw, policy, standard, guideline, or practice applicable to Merchants in the United States.

  T. "Type" means a category of General Purpose Cards, including traditional cards, rewards cards, or premium cards (e.g., a "Visa Signature Card" or a "World MasterCard").

  U. "Visa" means Visa Inc., a Delaware corporation with its principal place of business in San Francisco, California, its successors and assigns, and its subsidiaries (whether partially or wholly owned), divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees, but shall not include Visa Europe Limited and its wholly owned affiliates.

  V. The terms "and" and "or" have both conjunctive and disjunctive meanings.

## II. APPLICABILITY

This Permanent Injunction applies to American Express and to all other Persons in active concert or participation with it who receive actual notice of this Permanent Injunction by personal service or otherwise.

## III. PROHIBITED CONDUCT

  A. The purpose of this Section III is to allow Merchants to attempt to influence the General Purpose Card that a Customer uses by providing choices and information in a competitive market. This includes allowing Merchants to attempt to influence the General Purpose Card that a Customer uses by referencing brand names that could refer to both Brands of General Purpose Cards and brands of debit cards. This Permanent Injunction should be interpreted to promote all such efforts with the exception of surcharging and disparaging conduct. Accordingly, upon the Effective Date, American Express shall not adopt, maintain, or

enforce any Rule, or enter into or enforce any agreement, that directly or indirectly prohibits, prevents, or restrains any Merchant in the United States from:

1. offering the Customer a discount or rebate, including an immediate discount or rebate at the point of sale, if the Customer uses a particular Brand or Type of General Purpose Card or brand of debit card, or a Brand or Type of General Purpose Card or brand of debit card other than the General Purpose Card the Customer initially presents;

2. offering a free or discounted product if the Customer uses a particular Brand or Type of General Purpose Card or brand of debit card, or a Brand or Type of General Purpose Card or brand of debit card other than the General Purpose Card the Customer initially presents;

3. offering a free or discounted or enhanced service if the Customer uses a particular Brand or Type of General Purpose Card or brand of debit card, or a Brand or Type of General Purpose Card or brand of debit card other than the General Purpose Card the Customer initially presents;

4. offering the Customer an incentive, encouragement, or benefit for using a particular Brand or Type of General Purpose Card or brand of debit card, or a Brand or Type of General Purpose Card or brand of debit card other than the General Purpose Card the Customer initially presents;

5. expressing a preference for the use of a particular Brand or Type of General Purpose Card or brand of debit card;

6. promoting a particular Brand or Type of General Purpose Card or brand of debit card, through posted information, through the size, prominence, or sequencing of payment choices, or through other communications to a Customer;

       7.      communicating to a Customer the reasonably estimated (including, for example, average) or actual costs incurred by the Merchant when a Customer uses a particular Brand or Type of General Purpose Card or the relative costs of using different Brands or Types of General Purpose Cards; or

       8.      engaging in any other practices substantially equivalent to the practices described in Sections III.A.1 through III.A.7 of this Permanent Injunction.

    B.    Subject to compliance with the antitrust laws, the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, and any other applicable state or federal law, nothing in this Permanent Injunction shall prohibit American Express from:

       1.      enforcing existing agreements or entering into agreements pursuant to which a Merchant selects American Express General Purpose Cards as the only General Purpose Cards the Merchant will accept as payment for goods and services;

       2.      enforcing existing agreements or entering into agreements pursuant to which a Merchant agrees that it will encourage Customers to use co-branded or affinity General Purpose Cards bearing both the American Express Brand and the co-brand or affinity partner's name, logo, or brand as payment for goods and services and will not encourage Customers to use Other General Purpose Cards;

       3.      entering into agreements pursuant to which a Merchant agrees (i) that it will encourage Customers, through specific, listed practices falling under the protections enumerated in Sections III.A.1 through III.A.8 of this Permanent Injunction, to use General Purpose Cards bearing American Express's Brand as payment for goods and services, and (ii) that it will not use the same specific, listed practices to encourage Customers to use General Purpose Cards bearing any other Person's Brand as payment for goods and services; <u>provided</u>

6

<u>that</u> (a) any such agreement is not part of the Merchant's card acceptance agreement, is individually negotiated with the Merchant, and is not a standard agreement or part of a standard agreement generally offered by American Express to multiple Merchants (for the purpose of this Section III.B.3, an agreement is not made "non-standard" by inclusion of minor variations in wording; only a significant and substantive difference makes an agreement "non-standard"), and (b) the Merchant's acceptance of American Express's General Purpose Cards as payment for goods and services is unrelated to and not conditioned upon the Merchant's entry into any such agreement;

   4. adopting, maintaining, and enforcing Rules that prohibit Merchants from encouraging Customers to pay for goods or services using an American Express General Purpose Card issued by one particular Issuing Bank rather than American Express General Purpose Cards issued by any other Issuing Bank;

   5. adopting, maintaining, and enforcing Rules that require a Merchant that engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Permanent Injunction to also communicate to Customers that it accepts American Express General Purpose Cards by posting limited signage (including online or on mobile services) or communicating orally that the Merchant accepts American Express General Purpose Cards; <u>provided</u>, however, that American Express shall not require a Merchant that engages in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Permanent Injunction to do more than reasonably indicate to Customers its acceptance of American Express General Purpose Cards, and in no event shall the Rules deter steering or undermine its efficacy; and

   6. undertaking efforts to influence its Card Members to transact with Merchants that do not engage in any of the practices enumerated in Sections III.A.1 through

7

III.A.8 of this Permanent Injunction, or Merchants that enter into agreements with American Express pursuant to Section III.B.3 of this Permanent Injunction.

  C. Subject to Section III.A of this Permanent Injunction, nothing in this Permanent Injunction shall prohibit American Express from:

    1. adopting, maintaining, and enforcing Rules (including the Rules identified in Section IV.B of this Permanent Injunction) that prohibit Merchants from:

      a. disparaging its Brand, including engaging in activities that harm American Express's business or Brand; or

      b. mischaracterizing its Brand, including making untrue statements about American Express or about the Merchant's cost(s) for accepting American Express General Purpose Cards or Other General Purpose Cards, including the relative costs thereof; and

    2. adopting, maintaining, and enforcing Rules (including the Rules identified in Section IV.B of this Permanent Injunction) that prohibit Merchants from imposing surcharges.

**For the avoidance of doubt, American Express shall not prohibit, prevent, or restrain a Merchant from engaging in any of the protected practices enumerated in Section III.A of this Permanent Injunction on the grounds that American Express believes or asserts that one or more of such practices "disparages," "mischaracterizes," or "harms" its business or Brand.**

  D. American Express shall not adopt, maintain, or enforce any Rule, or enter into or enforce any agreement, that prohibits, prevents, restrains, deters, or inhibits an Acquiring Bank from supplying a Merchant, on a transaction-by-transaction or other basis, information regarding the costs or fees the Merchant would incur in accepting each General Purpose Card, including a

particular Type of General Purpose Card, presented by the Customer as payment for that Customer's transaction.

## IV. REQUIRED CONDUCT

A. Upon the Effective Date of this Permanent Injunction, American Express shall delete, discontinue, and cease to enforce in the United States any Rule that it would be prohibited from adopting, maintaining, or enforcing pursuant to Section III.A of this Permanent Injunction.

B. Specifically, upon the Effective Date of this Permanent Injunction, American Express shall cease to enforce or alter the following provisions currently contained in its Rules:

1. American Express shall modify Section 3.2 of the "American Express Merchant Reference Guide – U.S." (PX-0001) by no longer enforcing at least the double-bracketed and italicized language, as indicated below:

### 3.2 treatment of the American Express brand

American Express has built a brand that is synonymous with trust, integrity, security, quality, and customer service. We work diligently to uphold our reputation and restrict Merchants from engaging in activities that would harm our business or brand.

Except as expressly permitted by Applicable Law, Merchants must not:

- o [[*indicate or imply that they prefer, directly or indirectly, any Other Payment Products over our Card*,]]

- o [[*try to dissuade Cardmembers from using the Card,*]]

- o [[*criticize or*]] mischaracterize the Card or any of our services or programs,

- o [[*try to persuade or prompt Cardmembers to use any Other Payment Products or any other method of payment (e.g., payment by check),*]]

- o impose any [[*restrictions, conditions, disadvantages or*]] fees when the Card is accepted that are not imposed equally on all Other Payment Products, except for electronic funds transfer, cash, and checks,

9

- o engage in activities that harm our business or the American Express Brand (or both) [[,*or*

- o *promote any Other Payment Products (except the Merchant's own private label card that they issue for use solely at their Establishments) more actively than the Merchant promotes our Card*]].

[[*Merchants may offer discounts or in-kind incentives from their regular prices for payments in cash, ACH funds transfer, check, debit card or credit/charge card, provided that (to the extent required by Applicable Law):  (i) they clearly and conspicuously disclose the terms of the discount or in-kind incentive to their customers, (ii) the discount or in-kind incentive is offered to all of their prospective customers, and (iii) the discount or in-kind incentive does not differentiate on the basis of the issuer or, except as expressly permitted by applicable state statute, payment card network (e.g., Visa, MasterCard, Discover, JCB, American Express).  The offering of discounts or in-kind incentives in compliance with the terms of this paragraph will not constitute a violation of the provisions set forth above in this section 3.2.*]]

[[*Whenever payment methods are communicated to customers, or*]] when customers ask what payments are accepted, Merchants must indicate their acceptance of the Card [[*and display our Marks according to our guidelines and as prominently and in the same manner as any Other Payment Products*]].

The Merchant must not use our Marks in any way that injures or diminishes the goodwill associated with the Mark, nor (without our prior written consent) indicate that we endorse the Merchant's goods or services.  The Merchant shall only use our Marks as permitted by the Agreement and shall cease using our Marks upon termination of the Agreement.

2. American Express shall modify Section 3.2 of the "American Express Merchant Regulations – U.S." (PX-0002) by no longer enforcing at least the double-bracketed and italicized language, as indicated below:

### 3.2    treatment of the American Express Brand

For the past 150 years, American Express has built a brand that is synonymous with trust, integrity, security, quality, and customer service. We work diligently to uphold our reputation, and restrict Merchants from engaging in activities that would harm our business or brand.

Except as expressly permitted by Applicable Law, you must not:

10

- o [[*indicate or imply that you prefer, directly or indirectly, any Other Payment Products over our Card,*]]

- o [[*try to dissuade Cardmembers from using the Card,*]]

- o [[*criticize or*]] mischaracterize the Card or any of our services or programs,

- o [[*try to persuade or prompt Cardmembers to use any Other Payment Products or any other method of payment (e.g., payment by check),*]]

- o impose any [[*restrictions, conditions, disadvantages or*]] fees when the Card is accepted that are not imposed equally on all Other Payment Products, except for electronic funds transfer, or cash and check,

- o engage in activities that harm our business or the American Express Brand (or both) [[, *or*

- o promote any Other Payment Products (except your own private label card that you issue for use solely at your Establishments) more actively than you promote our Card*]].

[[*You may offer discounts or in-kind incentives from your regular prices for payments in cash, ACH funds transfer, check, debit card or credit/charge card, provided that (to the extent required by Applicable Law): (i) you clearly and conspicuously disclose the terms of the discount or in-kind incentive to your customers, (ii) the discount or in-kind incentive is offered to all of your prospective customers, and (iii) the discount or in-kind incentive does not differentiate on the basis of the issuer or, except as expressly permitted by applicable state statute, payment card network (e.g., Visa, MasterCard, Discover, JCB, American Express). The offering of discounts or in-kind incentives in compliance with the terms of this paragraph will not constitute a violation of the provisions set forth above in this section 3.2, "treatment of the American Express Brand."*]]

3. American Express shall modify the first paragraph of Section 3.2.1 of the "American Express Merchant Regulations – U.S." (PX-0002) by no longer enforcing at least the double-bracketed and italicized language, as indicated below:

### 3.2.1   treatment of the American Express marks

[[*Whenever payment methods are communicated to customers, or*]] when customers ask what payments are accepted, you must indicate your acceptance of

11

> the Card [[*and display our Marks (including any Card application forms we may provide you) as prominently and in the same manner as any Other Payment Products*]].

    4.    In order to implement its rights under Section III.B.5 of this Permanent Injunction, American Express may, if it chooses, also include the following supplemental language in its contracts with Merchants:

> If Merchants choose to attempt to influence a customer's choice of credit/charge card, such Merchants must also post limited signage at the point of sale (including online or on mobile services) or store entry or communicate orally that the Merchants accept the Card.

Any alternative or additional language must be disclosed to the Department of Justice in advance of implementation in accordance with Section IV.H of this Permanent Injunction, and must be consistent with American Express's limited authority under Section III.B.5 of this Permanent Injunction.

    5.    Nothing in this Section IV shall be construed to express any view on the legality of any Rule that American Express is not required to delete; in particular, no view is expressed concerning the legality of any past, present, or future Rule concerning surcharges.

    C.    American Express shall take the following actions to ensure that Merchants that accept American Express General Purpose Cards as payment for goods or services are notified of this Permanent Injunction and the Rules changes that American Express makes pursuant to this Permanent Injunction. Within ten (10) business days after the Effective Date of this Permanent Injunction, American Express shall furnish to the Department of Justice and the Representative Plaintiff States, for the approval of the Department of Justice, in consultation with the Representative Plaintiff States, a proposed form of written notification to be provided to Merchants:

    1.    describing the Rules changes made pursuant to this Permanent Injunction;

    2. informing Merchants that they are permitted to engage in any of the practices enumerated in Sections III.A.1 through III.A.8 of this Permanent Injunction; and

    3. informing each such Merchant that American Express will no longer enforce any provision in any agreement between American Express and the Merchant that American Express would be prohibited from entering into or enforcing pursuant to Section III.A of this Permanent Injunction.  American Express shall include the following statement in each such written notification:

> A federal court has ruled that American Express violated the law by prohibiting merchants from influencing the payment form that their customers use.  As a result of that ruling, you may now favor any credit card brand that you wish, by, for example, communicating to customers which credit card brand you would prefer that they use, telling customers which credit card brands are the most or least expensive for you, or offering discounts or incentives to customers to use the credit card brand you prefer.  Consistent with the federal court's ruling, you may not, however, disparage or mischaracterize the American Express brand or impose a surcharge (as opposed to a discount) on customers who use an American Express credit card.

Within five (5) business days after receiving the approval of the Department of Justice, American Express shall make reasonable efforts to furnish the approved notification described above, together with a paper or electronic copy of this Permanent Injunction (including by providing a hyperlink to the Permanent Injunction in an email communication) to each Merchant that is permitted to accept American Express General Purpose Cards as payment for goods or services.  For any Merchant that accepts American Express General Purpose Cards by virtue of contracts with third-party processors, such as External Sales Agents, OnePoint partners, or OptBlue partners, American Express shall give notice in compliance with this Section IV.C either directly to the Merchant or by directing such Person to provide notice in compliance with this Section IV.C to the Merchant.

D.     Within five (5) business days of entering into any agreement permitted by Section III.B.3 of this Permanent Injunction, American Express shall furnish electronically to the Department of Justice and the Representative Plaintiff States a complete copy of the agreement (including any attachments or appendices).

E.     American Express shall furnish to the Department of Justice and the Representative Plaintiff States quarterly, beginning ninety (90) days after the Effective Date of this Permanent Injunction, (i) a list of each Merchant whose right or ability to accept American Express General Purpose Cards as payment for goods or services was terminated or suspended by American Express for any reason during the preceding quarter; and (ii) a statement of the basis or bases for American Express's decision to terminate or suspend each Merchant's acceptance of American Express General Purpose Cards.

F.     Upon communicating to any Merchant that American Express might terminate, or intends to terminate, or has terminated, the right or ability of the Merchant to accept American Express General Purpose Cards as payment for goods or services, American Express shall include a written notice to the Merchant concerning its protected right to engage in steering under this Permanent Injunction.  As used in this Section IV.F, "terminate," "terminated," or "termination" include allowing a Merchant's contract to expire on the basis of the dates therein.

1.     The written notice shall inform the Merchant that it can file a complaint or inquiry with the Department of Justice if the Merchant believes it was threatened with termination or terminated for having engaged in steering or because American Express wrongly determined that the Merchant was disparaging or mischaracterizing American Express's Brand.

2.     Within five (5) business days after the Effective Date of this Permanent Injunction, the Government shall furnish to American Express the name and full contact

information for the representative from the Department of Justice appointed to receive complaints and comments from Merchants under this Section IV.F.

    3. Within ten (10) business days after the Effective Date of this Permanent Injunction, American Express shall furnish a proposed form of notice to the Department of Justice for its comment.  The notice shall include the name and full contact information for the representative from the Department of Justice appointed to receive complaints and comments from Merchants.

    4. If the parties cannot resolve any disputes regarding the language of the notice, they shall apply to the court for judicial resolution thereof.

  G. Within thirty (30) days after the Effective Date of this Permanent Injunction, American Express shall furnish to the Department of Justice and the Representative Plaintiff States an affidavit describing the actions it took to comply with Sections IV.A, IV.B, and IV.C of this Permanent Injunction.

  H. American Express shall provide notice to the Department of Justice and the Representative Plaintiff States thirty (30) days in advance of implementing any new or amended Rule that restricts, limits, or restrains how any Merchant accepts, processes, promotes, or encourages use of (i) Other General Purpose Cards, or (ii) debit cards.  Rules subject to this Section IV.H include, but are not limited to, those described in Section IV.B of this Permanent Injunction.

**V. COMPLIANCE AND ENFORCEMENT PROCEDURES**

  A. For purposes of determining or securing compliance with this Permanent Injunction, or of determining whether the Permanent Injunction should be modified or vacated, and subject to any legally recognized privilege, from time to time, duly authorized

representatives of the Department of Justice or the Representative Plaintiff States, including consultants and other persons retained by the Department of Justice or the Representative Plaintiff States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, and on reasonable notice to American Express, be permitted:

      1.    access during regular business hours to inspect and copy, or at the option of the Department of Justice or the Representative Plaintiff States, to require American Express to provide to the Department of Justice and the Representative Plaintiff States paper or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of American Express, relating to any matters contained in this Permanent Injunction; and

      2.    to interview, either informally or on the record, American Express's officers, employees, or agents, who may have their counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by American Express.

    B.    Upon the reasonable written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division or a joint written request by authorized representatives of each Representative Plaintiff State, American Express shall submit written reports or respond to written interrogatories, under oath, relating to any of the matters contained in this Permanent Injunction. Written reports authorized under this paragraph may require American Express to conduct, at its cost, an independent audit or analysis relating to any of the matters contained in this Permanent Injunction.

  C. No information or documents obtained by the means provided in Section V.A or V.B of this Permanent Injunction shall be divulged by the Department of Justice or any Plaintiff State to any person other than an authorized representative of the executive branch of the United States or the Attorney General's Office of any Plaintiff State, except in the course of legal proceedings to which the United States or the relevant Plaintiff State(s) is a party (including grand jury proceedings), or for the purpose of securing compliance with this Permanent Injunction, or as otherwise required by law.

  D. If at the time information or documents are furnished by American Express to the Department of Justice and the Representative Plaintiff States, American Express represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and American Express marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the Department of Justice and the Representative Plaintiff States shall give American Express ten (10) days' notice prior to divulging such material in any civil or administrative proceeding.

  E. To ensure its compliance with this Permanent Injunction and the antitrust laws, American Express shall perform the activities enumerated below in Sections V.E.1 through V.E.8 of this Permanent Injunction. The Chief Compliance Officer of American Express (or other officer designated by American Express to ensure compliance with this Permanent Injunction) shall be responsible for supervising American Express's efforts to comply with this Permanent Injunction and performance of the following:

    1. furnishing a copy of this Permanent Injunction, within thirty (30) days of its Effective Date, to each senior officer of American Express and to each American Express

17

employee who has direct contact with Merchants or who supervises employees who have direct contact with Merchants;

  2. furnishing a copy of this Permanent Injunction in a timely manner to each officer or employee who succeeds to any position identified in Section V.E.1 of this Permanent Injunction;

  3. ensuring that each person identified in Sections V.E.1 and V.E.2 of this Permanent Injunction receives training annually on the meaning and requirements of this Permanent Injunction;

  4. obtaining, within sixty (60) days after the Effective Date of this Permanent Injunction and on each anniversary of the Effective Date of this Permanent Injunction, from each person identified in Sections V.E.1 and V.E.2 of this Permanent Injunction, and thereafter maintaining, a certification that each such person (i) has read, understands, and agrees to abide by the terms of this Permanent Injunction; and (ii) is not aware of any violation of this Permanent Injunction or the antitrust laws or has reported any potential violation to the Chief Compliance Officer of American Express;

  5. communicating annually to American Express's employees that they may disclose to the Chief Compliance Officer of American Express, without reprisal, information concerning any potential violation of this Permanent Injunction or the antitrust laws;

  6. taking appropriate action, within five (5) business days of discovering or receiving credible information concerning an actual or potential violation of this Permanent Injunction, to terminate or modify American Express's conduct to assure compliance with this Permanent Injunction; and, within ten (10) business days of discovering or receiving such information, providing to the Department of Justice and the Representative Plaintiff States a

description of the actual or potential violation of this Permanent Injunction and the corrective actions taken;

       7.    furnishing to the Department of Justice and the Representative Plaintiff States on a quarterly basis electronic copies of any non-privileged communications with any Person containing allegations of American Express's noncompliance with any provision of this Permanent Injunction; and

       8.    providing to the Department of Justice and the Representative Plaintiff States annually, on or before the anniversary of the Effective Date of this Permanent Injunction, a written statement as to the fact and manner of American Express's compliance with Sections III and IV of this Permanent Injunction, and including the training or instructional materials supplied by American Express, pursuant to Section V.E.3 of this Permanent Injunction, to employees who have direct contact with Merchants.

    F.    Third parties may submit complaints concerning American Express's compliance with this Permanent Injunction to the Department of Justice, to the Representative Plaintiff States, or to the Chief Compliance Officer of American Express.

**VI.**    **ADDITIONAL PROVISIONS**

    A.    This court retains jurisdiction to enable the Department of Justice, the Representative Plaintiff States, any other Plaintiff State (after consultation with the Department of Justice and the Representative Plaintiff States), or American Express to apply to this court at any time for, or to act sua sponte to issue, further orders and directions as may be necessary or appropriate to carry out or construe this Permanent Injunction, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

B.  Nothing in this Permanent Injunction is intended to make any ruling or express any view about any Rule involving surcharging. Nothing in this Permanent Injunction is intended to make any ruling or express any view about the terms of the pending class settlement in 11-MD-2221 (NGG) (RER) (E.D.N.Y.). Nothing in this Permanent Injunction shall limit the right of the United States or of the Plaintiff States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any Rule of American Express, including any current Rule and any Rule adopted in the future.

C.  Unless this court grants an extension, this Permanent Injunction shall expire by its own terms and without further action of this court ten (10) years after its Effective Date, provided that, at any time prior to its expiration, the court may sua sponte or on the application of the Department of Justice or any Plaintiff State extend the Permanent Injunction by one or more one-year periods, if necessary to ensure effective relief.

SO ORDERED.

Dated: Brooklyn, New York
April 30, 2015

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge