UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES, *et al.*,<br><br>               Plaintiffs<br><br>          v.<br><br>AMERICAN EXPRESS CO., *et al.*,<br><br>               Defendants | NO. 10-CV-04496 (NGG) (RER)<br>ECF CASE |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY PENDING APPEAL**

Evan R. Chesler
Peter T. Barbur
Kevin J. Orsini
CRAVATH, SWAINE & MOORE LLP
   825 Eighth Avenue
      New York, NY 10019
         (212) 474-1000

Donald L. Flexner
Philip C. Korologos
Eric J. Brenner
BOIES, SCHILLER & FLEXNER LLP
   575 Lexington Avenue
      New York, NY 10022
         (212) 446-2300

*Attorneys for Defendants*

May 15, 2015

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................4

    I.    AMERICAN EXPRESS HAS ESTABLISHED IRREPARABLE HARM. ............4

    II.    AMERICAN EXPRESS HAS A SUBSTANTIAL POSSIBILITY OF
          SUCCESS ON APPEAL. ........................................................................................5

    III.    A STAY OF THE INJUNCTION WILL NOT SIGNIFICANTLY HARM
          THIRD PARTIES OR THE PUBLIC INTEREST. ..................................................7

CONCLUSION ..................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,
  598 F.3d 30 (2d Cir. 2010) ..................................................................................................... 5

Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship,
  225 B.R. 65 (D.N.J. 1998) ..................................................................................................... 8

Geneva Pharm. Tech. Corp. v. Barr Labs.,
  386 F.3d 485 (2d Cir. 2004) ............................................................................................. 6-7

Nken v. Holder,
  556 U.S. 418 (2009) ............................................................................................................ 10

Par Pharm., Inc. v. TWI Pharm., Inc.,
  No. 11-cv-2466, 2014 WL 3956024 (D. Md. Aug. 12, 2014) ...................................... 8

Queen City Pizza, Inc. v. Dominos Pizza, Inc.,
  124 F.3d 430 (3d Cir. 1997) .................................................................................................. 7

Seneca Nation of Indians v. Paterson,
  No. 10-cv-687A, 2010 WL 4027795 (W.D.N.Y. Oct. 14, 2010) .............................. 10

United States v. Visa,
  344 F.3d 229 (2d Cir. 2003) ............................................................................................. 4, 6

United States v. Visa,
  No. 98-cv-7076, 2002 WL 638537 (S.D.N.Y. Feb. 7, 2002) ......................................... 5

Winig v. Cingular Wireless LLC,
  No. 06-cv-4297, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ..................................... 8

**Other Authorities**

Brett Molina and Jefferson Graham, "Apple Pay competitor confirms email breach",
  USA Today, Oct. 30, 2014 .................................................................................................... 9

## INTRODUCTION

This motion seeks to maintain the status quo that has been in place for more than a decade in a complex industry operating at the very nerve center of the United States economy while the important legal determinations on which the Liability Decision is based are reviewed on appeal. This is the first decision in the Second Circuit in at least the last 25 years in which a vertical restraint has been found unlawful under the rule of reason, and the first ever Section 1 vertical, non-price case where the restraint found unlawful was used by a firm with less than 30 percent of the defined market. And, absent a stay, American Express would have to fundamentally restructure its business model and its relationships with tens of millions of merchants and Card Members while its appeal is pending. Given these circumstances, we respectfully request that American Express be given the opportunity to appeal the Court's decision in this critically important case before the far-reaching and potentially irrevocable effects of the Permanent Injunction take hold.

In its opening brief, American Express demonstrated that each of the factors relevant to the Court's resolution of this motion weighs strongly in favor of a stay pending appeal. None of the arguments to the contrary raised by the Government or merchants ("Merchants") merits denial of the motion.[1]

First, American Express would be irreparably harmed absent a stay. Contrary to the Government's and Merchants' claims, the relevant question for this factor is not whether American Express could survive without the NDPs, but whether, absent a stay, American

---

[1] The merchant opposition briefs are abbreviated herein as follows: (i) opposition filed under seal by Individual Merchant Plaintiffs (Dkt. No. 656) ("IMP Opp'n"); (ii) opposition filed by Merchant group (Dkt. No. 657) ("Merchants Opp'n"); (iii) opposition filed by Southwest Airlines (Dkt. No. 655) ("SW Opp'n"); and (iv) opposition filed by Home Depot (Dkt. No. 654) ("HD Opp'n").

Express will have to materially restructure its business model and its relationships with tens of millions of merchants and Card Members—and incur significant and unrecoverable costs in doing so—during the pendency of its appeal. This change in American Express's business model is precisely what the Government has sought in this case and what the Court found will happen under the Final Judgment. The NDPs have been a cornerstone of American Express's spend-centric model and customer relationships for decades. Their abrupt elimination would satisfy the irreparable harm standard. There is also a significant risk that, absent a stay, American Express will lose charge volume and Card Members while its appeal is pending, which is the same type of harm that the court in United States v. Visa, as well as other courts, identified as weighing strongly in favor of a stay pending appeal.

Second, American Express has demonstrated a substantial possibility of success on appeal. Never before in the Second Circuit (or, as far as American Express can tell, in any circuit) has a firm with less than 30 percent of the defined market been found liable under the rule of reason in a Section 1 vertical, non-price case. American Express's appeal raises "substantial legal issues" relating to a "complex industry" that do not turn on credibility determinations, just as in Visa, where Judge Jones granted a stay despite being "fully confident" in her rule-of-reason decision.

Third, even crediting the merchants' claim that they are paying higher discount fees than they would absent a stay, that does not establish a harm to third parties or the public interest. Merchants can pursue damages claims for any overcharge they believe they are paying as a proximate result of the NDPs (as many are doing now). And arguments regarding emerging payment technologies are, at bottom, simply claims that merchants would have access to additional tools to lower their payment costs but for the NDPs. Any purported harm resulting

2

from a delay in the widespread adoption of these technologies proximately caused by the NDPs would also be the subject of a damages claim. Nor do the opposition briefs explain why the NDPs must be lifted immediately despite the long period of time they were in place before the Government first challenged them—a period that included the Government's proffer of the testimony of Mr. Chenault in support of the same business model the Government now assails.

Throughout its opposition, with respect to each of these factors, the Government goes to great lengths in attempting to distinguish the stay decision in Visa—ironically, a case that, until now, the Government has cited as the "road map" that the Court should follow here. In Visa, the Government made—and Judge Jones, in weighing the factors and granting a stay, rejected—the exact same arguments that the Government asserts here. As it does here, the Government argued against the likelihood of success on appeal because the court's decision was based on "rule of reason case law and well supported by the record evidence", was "inherently fact-specific" and would "be accorded" substantial "deference" on appeal. (Declaration of Kevin J. Orsini ("Orsini Dec."), Ex. 1 at 1-2.) As it does here, the Government accused Visa and MasterCard of merely raising a "litany of issues they intend to raise on appeal", "[b]asically . . . reiterat[ing] their trial arguments which this Court rightly rejected". (Orsini Dec., Ex. 1 at 1-2.) As it does here, the Government argued that the claims of irreparable harm were "substantially the same as the rejected procompetitive justifications [Visa and MasterCard] offered at trial", and that "competition" for issuing banks "is not irreparable harm". (Orsini Dec., Ex. 1 at 2.) As it does here, the Government argued that the public interest supported a stay because "[t]he longer these rules are in effect, the longer consumers are denied the benefits of full competition, including increased output" and higher quality, more innovative products and services, and because "the next few years" are critical for innovation. (Orsini Dec., Ex. 1 at 2-3.)

3

In short, the Government repeats in its opposition to American Express's stay motion (and the Merchants largely adopt) the very same arguments that were rejected in Visa, a case involving "a horizontal restraint adopted by 20,000 competitors", United States v. Visa, 344 F.3d 229, 242 (2d Cir. 2003), not vertical, non-price restraints. And while, as the Government and Merchants note, American Express made some of these same arguments in its opposition to the Visa stay motion, they, too, were rejected by the district court in entering a stay in that case. As set forth in our Opening Memorandum and below, other courts in this Circuit routinely grant stays pending appeal and have repeatedly rejected those same arguments. (See Op. Br. at 3-4.)

## ARGUMENT

### I. AMERICAN EXPRESS HAS ESTABLISHED IRREPARABLE HARM.

Contrary to the Government's and Merchants' assertions, American Express never claimed that the irreparable harm justifying a stay is that it would "cease to exist" without one. Thus, there is no merit to the argument that American Express has merely "rehash[ed] the rejected procompetitive justifications it offered at trial". (Government Opp'n at 8; IMP Opp'n at 3 (arguing that the Court "rejected Amex's forecasts of doom and financial ruin").) Rather, as American Express made clear in its opening brief, even if it could compete effectively without the NDPs, to attempt to do so, American Express will, at a minimum, have to fundamentally restructure its business model and millions of merchant and Card Member relationships. This alone constitutes irreparable harm under the law.[2] (See Op. Br. at 6.)

---

[2] Events in Australia and Canada do not compel a different conclusion. Indeed, American Express has had to restructure its business model in response to merchant steering in those jurisdictions, including by reducing consumer card benefits and increasing annual fees. (See Liability Decision at 138 n.56; DX7202 at 2.) Moreover, American Express has adapted its business model in those jurisdictions in ways that would not be replicable in the United States— for example, in Australia, the bulk of American Express's growth has come from its GNS (bank issuance) business, made possible by the fact that there are only four banks in Australia (whereas there are over 10,000 in the United States). In addition, there is a regulatory cap on

Moreover, the irreparable harm at issue is not an increase in price competition that purportedly will follow the removal of the NDPs; it is the costly restructuring of American Express's business model and customer relationships which the Court found will likely occur in the event of merchant steering. Furthermore, the Government's claim that American Express must show that it "necessarily" will lose market share in a world with steering in order to establish irreparable harm (Government Opp'n at 9) misstates the law. The law requires only that irreparable harm be likely, not certain. See United States v. Visa, No. 98-cv-7076, 2002 WL 638537, at *1 (S.D.N.Y. Feb. 7, 2002) (noting that the possible consequences of denying a stay pending appeal were "potentially irreversible" (emphasis added)).

## II. AMERICAN EXPRESS HAS A SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL.

The Government challenges American Express's showing of a substantial possibility of success by accusing American Express of providing only a "skeletal description of the legal issues it intends to contest" and raising issues that turn on the Court's factual findings. (Government Opp'n at 7-8.) As discussed in American Express's opening brief, the standard for this factor requires only that the movant raise "sufficiently serious questions going to the merits to make them a fair ground for litigation", Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35, 38 (2d Cir. 2010), a standard that the Visa court held is satisfied where the legal issues are "substantial", involve a "complex industry" and do not turn on witness credibility assessments. Visa, 2002 WL 638537, at *1. Here, American

---

Visa/MasterCard interchange rates in Australia that does not exist in the United States. (See Tr. 5840:2-6 (Gilligan).) The Government's observations concerning Durbin are also irrelevant. The crux of the Liability Decision is that the type of steering that will be unleashed by the removal of the NDPs will have a far more significant impact on the GPCC card networks than the forms of steering permitted today, and the Government itself argued that American Express would respond to such steering by changing its business model. (See Op. Br. at 5-6.)

5

Express has satisfied this standard by raising a number of serious <u>legal</u> issues going to the merits of the Liability Decision that do not turn on witness credibility. To cite several examples:

<u>First</u>, never before in the Second Circuit (or any circuit, as far as American Express can tell), has a firm with less than 30 percent of the relevant market been held liable under the rule of reason in a Section 1 vertical, non-price case. The Government suggests that <u>Visa</u> is a roadmap to liability in this case, but <u>Visa</u> involved <u>horizontal</u> agreements, which are fundamentally different from the vertical agreements at issue here. <u>See</u> <u>Visa</u>, 344 F.3d at 242.

<u>Second</u>, the Government's claim that the two-sided market issues American Express will raise on appeal involve fact, rather than legal, questions is wrong. (Government Opp'n at 4.) The relevant questions—which include whether the effects of the NDPs on the cardmember side of a single market are relevant to the market power and competitive effects analyses, and whether an antitrust plaintiff can satisfy its rule-of-reason burden with evidence relating solely to one side of a two-sided market—are legal in nature, and the Court expressly noted its view that there is an absence of controlling authority on these questions. (Liability Decision at 12-13, 33-34 n.7, 135.)

<u>Third</u>, contrary to the Government's argument, American Express has no intention of arguing on appeal that the Court committed reversible error solely by rejecting the pricing evidence offered by American Express's expert, Professor Bernheim. (Government Opp'n at 5.) Rather, a key issue with respect to pricing (which relates to the issues of power and competitive effects) is whether it was legal error for the Court to rely on evidence relating to American Express's prices where the Court expressly found that there was no reliable evidence relating to American Express's costs, margins or two-sided price. (Liability Decision at 63-64); <u>cf.</u> <u>Geneva Pharm. Tech. Corp. v. Barr Labs.</u>, 386 F.3d 485, 500 (2d Cir. 2004) (rejecting

6

plaintiffs' pricing evidence, which lacked "any analysis of [the defendant's] costs", as "we do not know whether the allegedly elevated prices led to an abnormally high price-cost margin"). This, too, raises a substantial question of law going to the merits of the Liability Decision that will be subject to de novo review.

Fourth, the Government's suggestion that the source of American Express's "insistence" is irrelevant as a matter of law—a proposition for which it cites no authority—simply assumes the answer to a question American Express will raise on appeal: whether "insistence" that must constantly be earned through continuing, replicable, pro-competitive investment can be a source of durable antitrust market power.

Fifth, application of the Third Circuit's decision in Queen City Pizza, Inc. v. Dominos Pizza, Inc., which holds that the market definition analysis "looks not to the contractual restraints assumed by a particular plaintiff when determining whether a product is interchangeable", 124 F.3d 430, 438 (3d Cir. 1997), is another substantial question of law on which there is no contrary controlling precedent and which will be reviewed de novo on appeal.

### III. A STAY OF THE INJUNCTION WILL NOT SIGNIFICANTLY HARM THIRD PARTIES OR THE PUBLIC INTEREST.

Neither the Government nor the Merchants offer legitimate bases to deny a stay based on the final two factors—whether third parties or the public interest will be significantly harmed if a stay is granted.

First, the alleged harm from a stay as a result of having to pay purportedly higher discount rates during the pendency of American Express's appeal (Government Opp'n at 12-13; HD Opp'n at 3; SW Opp'n at 2; IMP Opp'n at 4-7) is neither irreparable nor significant. Merchants can readily pursue damages claims for any overcharge they believe they are paying as

7

a proximate result of the NDPs (as many are doing now, including the Individual Merchant Plaintiffs who oppose the stay on this ground).[3]

The Individual Merchant Plaintiffs also suggest that there may be additional damages that would not be proximately caused by American Express's NDPs and, therefore, might not be recoverable in a damages suit. (IMP Opp'n at 7 n.5.) But even if that were true, that would implicate the rules of proximate causation, not constitute a basis to deny the stay.[4]

<u>Second</u>, the claim that a stay would harm merchants by "stultifying their business models" is untenable. (Government Opp'n. at 14.) There was no evidence at trial that merchants' business models have been impacted by the NDPs. Rather, merchants claimed that, absent the NDPs, they would pay less for credit card acceptance. That is compensable by damages to the extent the merchant's injuries were proximately caused by the NDPs.

<u>Third</u>, the claim that consumers will pay higher retail prices during the pendency of the appeal if the stay is granted (a claim notably contradicted by the evidence that consumers

---

[3] The Individual Merchant Plaintiffs argue that harm to third parties need not be "irreparable" to tip this factor against a stay, citing case law that indicates the factor turns on the "significance" of the harm but does not explicitly state that the harm must be irreparable. (IMP Opp'n at 4.) But even if that is right, the significance of the harm cannot tip the balance against granting a stay if the third party can be fully compensated with money damages. See <u>Winig v. Cingular Wireless LLC</u>, No. 06-cv-4297, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) (granting stay pending appeal based in part on the fact that the party opposing the stay would not suffer substantial harm because interests were financial in nature and party could assert a claim for damages); <u>Par Pharm., Inc. v. TWI Pharm., Inc.</u>, No. 11-cv-2466, 2014 WL 3956024, at *4-5 (D. Md. Aug. 12, 2014), <u>appeal dismissed</u> (Dec. 3, 2014) (same); <u>Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship</u>, 225 B.R. 65, 75 (D.N.J. 1998) (same). Thus, the fact that merchants can seek full compensation for any damages proximately caused by the NDPs during the stay period shows that the purported harm is neither irreparable nor significant.

[4] In arguing that merchants will be harmed by a stay, the Individual Merchant Plaintiffs rely on a declaration from Spirit Airlines regarding its purported desire to use the Permanent Injunction to its advantage in pursuing a low cost carrier model. But Spirit's model is predicated on <u>surcharging</u> above the "bare fare" (<u>see, e.g.</u>, Orsini Dec., Ex. 2 (screen-shot of Spirit website)), a practice that the Permanent Injunction does not address.

8

have received no pass-through savings in Australia (see DX7202 at 2)) cannot be a basis to deny American Express's stay (see IMP Opp'n at 6-7). Were it otherwise, no stay could ever issue in an antitrust case involving indirect purchasers since it is virtually always the case that indirect purchasers are barred from seeking damages. There is no such categorical rule. In fact, in Visa, the court issued a stay over the Government's argument that "the longer these rules are in effect, the longer consumers" (who would not have a money damages claim against Visa and MasterCard) "are denied the benefits of full competition . . . ." (Orsini Dec., Ex. 1 at 2-3.)

Fourth, the arguments regarding emerging payment technologies such as MCX do not justify the denial of a stay. (See Government Opp'n at 13; HD Opp'n at 3; SW Opp'n at 3-4; Merchants Opp'n at 2 n.2.) At bottom, these are simply claims that merchants would have access to additional tools to lower their payment costs but for the NDPs. This purported harm could also be the subject of a damages claim (even assuming it could be shown that, but for a stay, these technologies would experience more significant growth during the pendency of American Express's appeal). The Government and some Merchants also suggest that "a delay in innovation in the payment industry or entry by a low cost competitor is a harm from which the industry might never recover". (See HD Opp'n at 3.) But this hyperbolic speculative claim lacks any evidentiary or logical support. Indeed, the Court pointed to the emergence of new technologies—such as PayPal—in the presence of the NDPs. (Liability Decision at 70-71.)[5]

Fifth, none of the opposing parties can explain why the Permanent Injunction must take effect immediately despite the long history of forbearance by the Government in challenging the NDPs. As American Express explained in its Motion, over two decades passed

---

[5] MCX might not itself be the specific solution adopted by the industry, but only because of its own well-documented problems, including security issues and the perceived superiority of other technologies such as Apple Pay. (See, e.g., Orsini Dec., Ex. 3 (Brett Molina and Jefferson Graham, "Apple Pay competitor confirms email breach", USA Today, Oct. 30, 2014).)

with American Express pursuing its current business model centered on the current NDPs before the Government began its investigation. During that time, the Government actively promoted American Express's spend-centric business model as an essential competitive check on Visa and MasterCard, even preparing Mr. Chenault to testify about the competitive benefits of that model at the trial in Visa.[6]

## CONCLUSION

American Express respectfully asks the Court to consider that its liability conclusion, grappling as it does with complex legal issues in a complex industry, might be wrong; that American Express's business model, and its position in the industry, will be profoundly affected by a far-reaching injunction that would, in that event, be vacated on appeal; and that the status quo would likely not be restored or restorable.

We urge the Court to give American Express the opportunity to challenge this Court's judgment without enduring an immediate assault on a long-standing business model that has enabled it to compete against its dominant rivals.

---

[6] Home Depot also attempts to distinguish Seneca Nation of Indians v. Paterson, No. 10-cv-687A, 2010 WL 4027795 (W.D.N.Y. Oct. 14, 2010), by suggesting that the stay pending appeal granted in that case was not based on the fact that the government had waited years to enforce the law at issue. That argument fails. While the factors looking to harm to other parties or the public interest merge when the government is a party, see Nken v. Holder, 556 U.S. 418, 435 (2009), the court in Seneca addressed these factors separately. The court believed that there would not be harm to the government because "New York voluntarily chose to forebear collection of cigarette taxes from Indian retailers for many years"; as a result, the court did "not believe that the minimal, additional delay pending appeal will cause substantial injury". Seneca Nation, 2010 WL 4027795, at *3. With respect to the public interest, the court then noted a fact unique to that case—that the parties believed there was a "potential for violence" surrounding the outcome of the case—which the court believed weighed in favor of preserving the status quo by granting a stay. Id. at *3. Nothing about that unique fact undermines the court's clearly stated belief that the state's "lengthy prior history of forbearance" from collecting cigarette taxes weighed in favor of granting a stay. Id.

May 15, 2015

                                  Respectfully submitted,

                                  */s/ Evan R. Chesler*

                                  Evan R. Chesler
                                  (echesler@cravath.com)
                                  Peter T. Barbur
                                  (pbarbur@cravath.com)
                                  Kevin J. Orsini
                                  (korsini@cravath.com)
                                  Members of the Firm

                                  CRAVATH, SWAINE & MOORE LLP
                                        Worldwide Plaza
                                          825 Eighth Avenue
                                            New York, NY 10019
                                                (212) 474-1000

                                  Donald L. Flexner
                                  (dflexner@bsfllp.com)
                                  Philip C. Korologos
                                  (pkorologos@bsfllp.com)
                                  Eric J. Brenner
                                  (ebrenner@bsfllp.com)

                                  BOIES, SCHILLER & FLEXNER LLP
                                       575 Lexington Avenue
                                          New York, NY 10022
                                               (212) 446-2300

                                  *Counsel for Defendants American Express Company and American Express Travel Related Services Company, Inc.*