UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
    UNITED STATES OF AMERICA, et al.,

                    Plaintiffs,

          -against-

    AMERICAN EXPRESS COMPANY and
    AMERICAN EXPRESS TRAVEL RELATED
    SERVICES COMPANY, INC.,

                    Defendants.
-------------------------------------------------------------------X

**ORDER**

**10-CV-4496 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

At the request of the parties, the court resolves in this Order their disagreement concerning the scope of one of the terms of the Permanent Injunction previously entered in this action.[1] (See Order Entering Permanent Inj. as to American Express Defs. (the "Permanent Injunction") (Dkt. 638); Pls.' Not. of Mot. to Enforce Permanent Inj. (Dkt. 689-1); Pls.' Mem. in Supp. of Mot. to Enforce Permanent Inj. ("Pls.' Mem.") (Dkt. 689-2); Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Enforce Permanent Inj. ("Defs.' Mem.") (Dkt. 692-1); Pls.' Reply Mem. in Supp. of Mot. to Enforce Permanent Inj. ("Pls.' Reply") (Dkt. 693).) See generally United States v. Am. Express Co., 88 F. Supp. 3d 143 (E.D.N.Y. 2015) (findings of fact and conclusions of law); United States v. Am. Express Co., No. 10-CV-4496 (NGG) (RER), 2015 WL 1966362 (E.D.N.Y. Apr. 30, 2015) (setting forth reasoning behind certain terms in the Permanent Injunction).[2] For the reasons discussed below, Plaintiffs' motion to enforce the Permanent Injunction is GRANTED.

---

[1] The court exercises jurisdiction at the request of the parties and pursuant to the terms of the Permanent Injunction. (See Permanent Inj. ¶ VI.A.)

[2] Although Defendants' appeal of these decisions remains pending, this court and the Second Circuit each denied Defendants' motions for a stay of the Permanent Injunction pending appeal, and the Permanent Injunction therefore

1

The Permanent Injunction sets forth forms of enjoined conduct (see generally Permanent Inj. ¶ III.A), as well as forms of conduct that are not enjoined (see generally id. ¶ III.B). Among the conduct not prohibited by the Permanent Injunction is Defendants' ability to:

> enforc[e] existing agreements or enter[] into agreements pursuant to which a Merchant agrees that it will encourage Customers to use co-branded[3] or affinity General Purpose Cards bearing both the American Express Brand and the co-brand or affinity partner's name, logo, or brand as payment for goods and services and will not encourage Customers to use Other General Purpose Cards.

(Id. ¶ III.B.2.) A separate provision of the Permanent Injunction requires Defendants to provide notice to merchants[4] of the terms of the Permanent Injunction and the changes to Defendants' anti-steering rules (the "NDPs") that it imposes.[5] (Id. ¶ IV.C.)

The parties disagree on the language of the notice that Defendants must send to their co-brand partners—namely, whether Paragraph III.B.2 provides in effect that co-brand merchants have not gained the ability to steer, and therefore Defendants need not provide any notice explaining this new right. According to Defendants, they remain authorized under the Permanent Injunction to enforce existing "agreements" in which co-brand merchants have agreed to encourage the use of co-branded Amex cards and not to encourage the use of other cards. (See Defs.' Mem. at 2.) Consistent with this interpretation, Defendants propose sending notices to their ten existing co-brand merchants in which they inform the co-brand merchants that— unlike other merchants, who may now favor any credit card brand they wish—"in light of your

---

currently is in effect. (See May 19, 2015, Order (Dkt. 663); June 16, 2015, Order of U.S. Court of Appeals (Dkt. 687).)

[3] For a description of co-branded credit and charge cards and their distinct issuance market, see generally American Express Co., 88 F. Supp. 3d at 154, 164, 203-04, 227-30.

[4] The Permanent Injunction defines "Merchant" broadly as "a Person that accepts American Express's General Purpose Cards as payment for goods or services." (Id. ¶ I.M.)

[5] Other than the co-brand merchants discussed in this Order, Defendants have provided such notice to all other applicable Amex-accepting merchants. (See Defs.' Nov. 13, 2015, Ltr. (Dkt. 690-1).)

2

American Express co-brand Card relationship, the terms of your existing Card acceptance agreement and co-brand Card agreement are not altered by [the court's] ruling. Thus, all terms of your Card acceptance agreement and co-brand Card agreement remain in full force and effect." (Defs.' Proposed Not. to Co-brand Partners (Decl. of Bennett J. Matelson ("Matelson Decl.") (Dkt. 689-3) ¶ 3, Ex. B (Dkt. 689-5)).)

Plaintiffs, on the other hand, argue that the carve-out contained in Paragraph III.B.2 applies much more narrowly, and they contend that Defendants' co-brand merchants, like all other merchants, "have been liberated from the NDPs in [their] card acceptance agreements [as opposed to their co-brand agreements] and should be notified that they are free to steer if they choose." (Pls.' Mem. at 1.) Plaintiffs propose that Defendants send notices to co-brand merchants materially similar to the notices they previously sent to all other merchants, with an additional provision clarifying that "[a]lthough the court has ordered certain modifications to American Express Card acceptance agreements, the terms of your existing American Express co-brand Card agreement are not altered by this ruling." (Pls.' Proposed Not. to Co-brand Partners (Matelson Decl. ¶ 2, Ex. A (Dkt. 689-4)).)

The court has reviewed the disputed language contained in the Permanent Injunction and the parties' legal and factual submissions. Consistent with the court's intent in entering the Permanent Injunction, as well as the broad remedial purpose of a permanent injunction entered in an antitrust enforcement action, the court concludes that Paragraph III.B.2 does not exempt co-brand merchants from the otherwise applicable terms of the Permanent Injunction, and therefore Defendants would violate the Permanent Injunction by sending a notice to co-brand merchants informing them that they have not gained the ability to steer.

Defendants' arguments to the contrary fail as a matter of logic. Defendants primarily contend that existing co-brand merchants have already "agreed," via two "two separate, but related and intertwined, agreements," not to steer away from American Express GPCC cards (Defs.' Mem. at 5), and therefore Defendants may, under the terms of the Permanent Injunction, "enforce[e]" these "existing agreement[s]" (see Permanent Inj. ¶ III.B.2). Thus, Defendants essentially "ask[] the court to interpret the Permanent Injunction to mean that a merchant's act of signing a co-brand contract and a separate acceptance contract containing NDPs—even if signed years apart and negotiated without reference to each other—means that the merchant has willingly waived any right to steer." (Pls.' Reply at 1.) In the court's view, no matter the degree of competition in the market to sign co-brand merchants, see Am. Express Co., 88 F. Supp. 3d at 227 (describing intense competition between firms for co-brand relationships with merchants), Defendants ignore the court's finding that they imposed the NDPs on merchants (including co-brand merchants) through the exercise of market power, and nothing in the record indicates that existing co-brand merchants simply would have agreed to the NDPs, if contained in the co-brand agreements rather than the generally applicable acceptance agreements, without receiving anything of value in return.[6] Rather, the trial record as a whole demonstrates that co-brand merchants have been frustrated by the effects of the NDPs contained in their merchant agreements. See, e.g., Am. Express Co., 88 F. Supp. 3d at 219, 221-22 (describing testimony by Hilton, a co-brand merchant).

Thus, like other merchants, co-brand merchants have gained through the entry of the Permanent Injunction the ability to steer between brands of credit card. For co-brand merchants,

---

[6] Compare, e.g., Defs.' Mem. at 3, 6-7 (arguing that Defendants simply could have "copied and pasted" the NDPs contained in acceptance agreements into co-brand agreements), with Pls.' Reply Mem. at 5 (characterizing Defendants' argument as a "red herring," since "[t]he co-brand negotiation took place in a competitive environment, while the card acceptance agreements did not").

4

however, two considerations temper this new ability to steer. First, by Defendants' own admission, "[i]t is extremely unlikely, for a variety of reasons, that merchants would steer their customers away from their own co-brand Cards in a world without American Express's [NDPs]." (Defs.' Mem. at 5 n.1.) This is because it almost certainly is not in a co-brand merchant's economic or long-term interest to steer <u>away</u> from its co-branded card.[7] Accordingly, Defendants significantly overstate their concern that they will lose the benefit of the "billions of dollars" they have invested in existing co-brand agreements to promote "a positive perception of the American Express brand." (<u>See</u> <u>id.</u> at 8.) The court is confident that the ability of co-brand merchants to steer will not harm Defendants' brand or somehow nullify Defendants' (and co-brand merchants') mutual investment in the co-brand relationship. Second, the parties agree that going forward, the Permanent Injunction permits Defendants to enter into new co-brand agreements in which the co-brand merchant agrees (presumably for consideration, as the court has not found that Defendants possess market power in the co-brand issuance market) to encourage customers to use the co-branded card and not to use other cards.[8] (<u>See</u> Permanent Inj. ¶ III.B.2; <u>see also</u> Defs.' Mem. at 1-2 (explaining that the parties agree that Defendants are permitted, in the future, to elect not to enter into a co-brand agreement unless a merchant agrees not to steer away from Amex, and characterizing the current dispute before the court as

---

[7] Still, a co-brand merchant may seek to steer away from a general Amex card as distinct from the merchant's co-branded Amex card. <u>See, e.g.</u>, Am. Express Co., 88 F. Supp. 3d at 221 (crediting testimony by Hilton that it would steer if permitted to do so). Moreover, with the NDPs in place, a co-brand merchant also would be prohibited from steering between non-Amex brands (for example, from MasterCard to Discover) even when American Express is not mentioned by the merchant or its customer. (<u>See</u> Pls.' Reply Mem. at 4 n.3.)

[8] Similarly, for other merchants, a separate provision of the Permanent Injunction permits Defendants to enter into new contractual agreements (required to be distinct from the general merchant agreement) in which a merchant agrees to encourage its customers to use Amex-branded cards and agrees not to encourage its customers to use cards bearing other brands. (<u>See</u> Permanent Inj. ¶ III.B.3.)

"a technical question of how <u>existing</u> co-brand agreements . . . can be enforced" (emphasis added)).)

Finally, the court is unpersuaded by Defendants' structural argument that Paragraph III.B.2 expressly allows for the enforcement of "existing agreements," whereas other provisions contained in the Permanent Injunction anticipate only new agreements. (See Defs.' Mem. at 6-7; <u>see also</u> Permanent Inj. ¶ III.B.3.) Whatever "existing agreements" between Defendants and co-brand merchants that Paragraph III.B.2 contemplates, Defendants have failed to show that there are, in fact, any "existing agreements" in which co-brand merchants, absent the influence of Defendants' market power in the GPCC card network services market, willfully agreed to the terms of the NDPs as a benefit of the bargain with respect to their co-brand agreements.[9] To put it in the words of Plaintiffs: "The point is that [Paragraph] III.B.2 envisions a partnership between Amex and a merchant in which both parties deliberately commit to all terms of the relationship. Amex's NDPs, imposed through market power and separately from the co-brand discussions, do not entail such a conscious commitment on the part of the merchants—as their testimony confirms." (Pls.' Reply Mem. at 3 n.3.)

Accordingly, for the reasons set forth above, the court rejects Defendants' interpretation of Paragraph III.B.2 with respect to Defendants' existing co-brand merchants, GRANTS Plaintiffs' motion to enforce the terms of the Permanent Injunction with respect to those merchants, and DIRECTS Defendants promptly to provide proper notice to their co-brand merchants consistent with this Order. Nothing contained in this Order shall prohibit Defendants

---

[9] As in its prior decision, the court rejects Plaintiffs' arguments based on the existence of a similar provision in the Visa and MasterCard consent decree, or on those companies' course of conduct under the decree. <u>See</u> <u>Am. Express Co.</u>, 2015 WL 1966362, at *10-11 ("While the court recognizes the interplay between the Permanent Injunction and the Consent Decree, it also recognizes that the Permanent Injunction must be based on the evidence submitted at trial.").

from entering into future agreements with existing or new co-brand merchants that limit co-brand merchant steering consistent with the terms of Paragraph III.B.2.

SO ORDERED.

Dated: Brooklyn, New York
   December 15, 2015

            /s/ Nicholas G. Garaufis
            NICHOLAS G. GARAUFIS
            United States District Judge